POLATTY v. CHAR. & WEST. CAR. RY.

1. PRESUMPTIONS—MASTER AND SERVANT.—Third persons have the right to assume that when they find one in possession of the master's property, managing the same, such possession and management is by permission of the master, but the rule is different as between master and servant.

2. RAILROADS—TRESPASSER.—Is it the duty of a railroad company to stop its cars to eject a trespasser?

3. IBID.—IBID.—ENGINEER—NONSUIT.—A railroad company is liable to a trespasser on a mail car adjoining the tender of the engine for injuries received by reason of blocks of coal thrown at him by the engineer, while the train was in motion, which struck him, caused him to lose his hold and fall to the ground, from which he was further injured, and nonsuit was properly refused.

4. IBID.—ENGINEER—MASTER AND SERVANT—PRINCIPAL AND AGENT—JURY.—Under the allegations and proof here, it was proper for the Judge to submit to the jury whether the engineer, when committing the tortious acts complained of, was acting within the scope of his agency.

Before BUCHANAN, J., Laurens, October, 1902. Affirmed.

Action by Everett Polatty, minor, by his guardian *ad litem,* W. M. Polatty, against Charleston and Western Carolina Railway. Defendant appeals from Circuit judgment.

· *Messrs. Simpson & Cooper,* for appellant, cite: *Master is only liable for acts of servant within scope of his authority:* 1 Ency., 2 ed., 988; 20 Ency., 2 ed., 167; 1 Rorer on R. R., 1192; 38 S. C., 29; 58 S. C., 143; 15 Ency., 2 ed., 808; 11 Ency., 2 ed. *As to removal of trespassers from cars by employees:* 20 Ency., 172; 49 Am. R., 780. *As to wilful, &c., acts of servant:* 20 Ency., 169, 171, 174; 26 Ind., 70; 37 S. C., 194; 58 S. C., 144.

*Messrs. Evans & Finley* and *Ferguson & Featherstone,* contra. The former cite: *Duty of railroad to trespasser:* 58 S. C., 80; 128 N. C., 333; 23 S. C., 535; 63 S. C., 57; 57 S. C., 242; 34 S. C., 292; 41 S. E. R., 810. *Whether employee acted within scope of employment is for jury:* 14 J. & S., 526; 64 N. Y., 129; 160 Pa., 300; 16 A. & E. R. R. Cas., N. S., 679; 22 Jones & S., 354; 32 S. C., 1; 48 Ark., 177; 42 L. J. C., 302; 29 L. T. N. S., 329; 57 Mich., 3; 12 Jones & S., 1; 8 Jones & B., 374; 54 Mich., 73; 22 L. R. A., 72. *Servant owes to one same duty that master owes:* 103 Ill., 546; 37 S. C., 194; 14 Jones & S., 526; 128 N. C., 925. *As to what acts of servant are within scope of authority:* 123 N. C., 197; 128 N. C., 333; 16 A. & E. R. R., 679; 98 Ind., 552; 87 N. Y., 25; 41 Am. R., 339; 147 U. S., 101. *Master not liable if servant is pursuing independent purpose:* 14 A. & E. Ry. Cas., N. S., 561. *If servant acts apparently within scope of his authority or · master ratifies his act, master is liable:* 50 Am. R., 259; 64 N. Y., 129; 19 Ohio, 110; 47 N. Y., 122; 46 N. Y., 23; 42 Mo., 79; 15 La., 169; 40 La., 87; 58 Ia., 348. *The test is whether servant acted for benefit of master or pursued an independent purpose of his own:* 69 Tex., 156; 3 Head,

Tenn., 471; 47 N. Y., 126; 64 N. Y., 134; 37 Ill. App., 595; 26 Ind., 70; 28 Ill., 434; 50 Am. Dec., 416; 70 Ala., 268; Cooley on Torts, 536; 37 S. C., 194; Thomp. on Neg., 88; 10 U. S., 473; 3 C. C. A., 506; 53 F. R., 219; 56 L. R. A., 749.

November 24, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This was an action for damages for personal injuries. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit, which motion was denied by the Circuit Judge. Upon the testimony and the charge of the Judge, the jury returned a verdict in favor of plaintiff. After judgment, defendant appealed upon the ground of alleged error of the Circuit Judge in refusing motion for nonsuit. It becomes necessary, therefore, to direct our inquiry to this alleged error. The grounds of appeal are as follows:

"(1) Because the Circuit Judge erred in not holding on the motion for nonsuit at the conclusion of the plaintiff's case that there was no evidence tending to show that the acts of which the plaintiff complained were within the scope of duty of the engineer of the defendant company, and that the defendant was not bound thereby, and in not, therefore, granting the motion for nonsuit.

"(2) Because the Circuit Judge erred in not holding that the evidence adduced by the plaintiff shows 'that the act or acts of the engineer of the defendant company of which the plaintiff complained were outside of and beyond the scope of the authority and employment of such engineer, and that defendant was not bound thereby, and in not, therefore, granting the motion for nonsuit.' "

It is proper at this juncture to state in brief the facts underlying plaintiff's action, and as stated by the respondent in his argument they are as follows: "This was an action brought by Everett Polatty, through his guardian *ad litem,* W. M. Polatty, for damages against the Charleston and

Western Carolina Railroad Company, for wilful and wanton assault upon his person while on its train, under the following circumstances : Polatty was a young man, an operative in the cotton mill at Gaffney, S. C.   He received information that his mother was ill, and being out of funds attempted to travel from Gaffney to Warrenville, in Aiken County, where his father, postmaster at that place, and sick mother were living.   He succeeded in getting as far as Laurens through the kindness of the railway conductor, who allowed him to ride from Enoree to Laurens free of charge, at which point the train of the generous conductor stopped.   He boarded at Laurens the regular passenger train bound for Augusta, Ga. He got as far as Waterloo, the next station beyond Laurens, where he got off the train.   He boarded the same train again, getting on the platform on the front end, or blind end, as it is called, of the mail car, next to the engine.   The mail car had no door at this end, hence its name, 'blind end.'   The engineer and fireman saw him standing on the platform just in the rear of the tender of the engine, and while the train was running at the rate of about ten miles an hour, commenced hollering at him to get off ; upon his failure to do so, the engineer commenced throwing coal at him.   He struck him with a lump of coal in the small of the back, causing him to loose his hold and fall from the car to the ground, thereby dislocating his ankle, and requiring the expenditure of money in doctor's bills for a period of nearly six months.   His escape from death was miraculous, and it was through no fault of the engineer or servants of the railway company that he was not killed.   The case was tried at Laurens, before Judge Buchanan and a jury.   The jury promptly rendered a verdict for $1,500 in favor of plaintiff, from which the defendant appeals to this Court."

We have been saved reproducing in this opinion very many citations of authority in order to establish the principle of law, that the master is responsible for wilful acts of his employee when such are within the scope of his duty or the line of his employment, by the following

admission of the appellant: "Whatever the rule may have heretofore been in this State, it is now established law that the master is responsible for wilful acts of his employee when such acts are within the line of his employment;" but along with that admission the appellant contends that it was the duty of the plaintiff to have offered testimony going to show that defendant's servant, the engineer, was authorized by his principal to do the act complained of, or that the act complained of was in the line of duty of the servant, the engineer.    It is necessary to draw the distinction as to the law governing the relation between the principal and the agent as between themselves and that of the principal and his agent, on the one hand, and third persons, on the other. Of the latter class of cases, it must be remembered that third persons have the right to assume that when they find an agent in possession of the principal's property, managing the same, such possession and management by the agent or servant is by permission of the principal or master.    For instance, a passenger finding a man in the uniform of the conductor in possession and control of a passenger coach on a railway, would have the right to assume that he was such conductor, and in the event such conductor was guilty of a tortious act to the injury of a passenger, such passenger would have a right of action against such railway, because of the tortious act of said conductor while in charge of such train, and that to sustain such passenger's action, he would be required to prove the conduct of such conductor, and not to prove the conductor's authority to control the train on which the passenger was riding, when he was assaulted by the conductor. It would devolve upon the railway to give proofs that the conductor was not in fact in his employ, or any other defense that such railway might have.    Not so would be the consequences by a servant against its master.    The presumption in such case would be in favor of a master, that his servants were properly selected and his machinery sufficient.    In other words, the servant would have to allege and prove *prima facie* that the servants of the master were illy chosen

or that his machinery was defective. It may be replied, however, that we have illustrated our meaning by the case of a passenger as a third person, but this need not give any concern, for a railway owes to every one on its moving passenger trains, whether passenger or trespasser, a duty. A railway can only properly discharge a passenger after its train is brought to a standstill, and it can only properly discharge a trespasser upon its train when the same is brought to a standstill. Certain it is that it is not in the power of a railway to have trespassers upon its passenger trains so stricken by its agents with rocks, or pieces of coal, or sticks—stricken with such force that they (the trespassers) shall fall from the cars, receiving thereby grievous bodily hurt. If it was made necessary that a trespasser who was stricken by a servant of the railway, which engaged in the performance of his duties on a passenger train, and while actually so employed on said train should by testimony show that the servant who struck him was commissioned by the railway to do specific duties, and that amongst his duties was included that which authorized him to strike him; it would be a sad day to persons who had lost all means of travel on the railroads.

However, it is contended here that only a conductor would have the duty of removing trespassers from passenger trains—that it was not in the line of employment of an engineer to throw rocks or stones at a trespasser, or, to place it more mildly, that an engineer would not find it in the line of his employment to require a trespasser upon his cow-catcher, or in his cab, or in the tender to his engine, or on the platform at the blind end of a mail coach, after coming to a full stop, to leave the same. Such is not the law. In one of the authorities cited by appellant, *Carter* v. *Louisville &c. R. R. Co.,* 49 Am. Rep., 780, it is decided that the master—the railroad company—would be liable if his engineer, while on his engine, threw off a truspasser while on the engine, and injured such trespasser thereby. Must an engineer stop and think what his

powers of interference may be with trespassers riding on the cow-catcher of his engine, his tender, or the platform near his engine, who were engaged or may be engaged in doing an injury to the machinery of the master, which machinery is placed by the master under his charge? The case last cited held that the engineer could throw out and off of his engine a trespasser while on the engine. The cow-catcher is a part of the engine, the tender thereto attached is a part thereto, and no great care will be taken to differentiate the case of a trespasser upon the platform next to the tender of the engine and a trespasser upon the engine itself. We must not be understood as holding that an engineer is invested by the railway company with powers co-extensive with those entrusted to a conductor, or that the powers of an engineer collide with those of a conductor. What we do hold is that *ex necessitate,* an engineer must be intended to have been clothed by his principal—the railway company—with power to preserve order and expel intruders and trespassers from his engine, cow-catcher, tender and the platform adjoining the same, with a view actually to protect the property confided to him by his principal.

Then, if this be so, how far does this power extend as to trespasses? We answer: Co-equal with that of his principal in this matter. When, therefore, a tort is committed by an engineer while in the employment of a railway company, as we have just announced them as affecting trespassers, the principal of the engineer is liable for such torts. If, therefore, such engineer should have thrown coal so as to strike the person of a trespasser with such violence as to cause such trespasser to fall from a moving train, whereby such trespasser received such grievous bodily hurt, then the master would be held liable therefor.

Other reasons why the Circuit Judge could not have properly granted the motion for a nonsuit in this action was this: (a) Defendant went to trial upon the plaintiff's complaint in the form presented by him. Then, testimony was admissible to prove the allegations of the com-

plaint, without any objection as to the relevancy of such testimony. There was some testimony, therefore, upon such allegations of the complaint, and it was not in his power to grant a nonsuit; (b) and this: When it was proved in the testimony offered by the plaintiff that the engineer, as the servant of the railway company, was in charge of the engine propelling this train, and that while in the discharge of his duties as such engineer he threw the three pieces of coal from his engine at the plaintiff, one of which struck the plaintiff, causing him to fall off said train and thereby injuring him grievously, there arose this question of fact: Was the conduct of such engineer within the scope of his employment as such engineer? Questions of fact must be solved by the jury, under the instructions by the Court, as to what in law was meant by the expression, "within the scope or line of his employment." This question was solved by this Court in the case of *Redding* v. *S. C. Railroad Co.,* 3 S. C., 9, where it was said: "When, however, the Circuit Judge assumed to decide that 'Wollen was not acting within the scope of any engagement or agency, direct or indirect, when he excluded the plaintiff' (Mrs. Redding) 'from the saloon, but was acting without authority, beyond his legitimate employment, and in violation of the instructions and wishes of the defendant, extended to its proper agents, and that upon the testimony the act was the tort of Charles Wollen, for which he is responsible, and not the company,' he undertook to decide an issue which properly belonged to the jury."

We have not deemed it necessary to reproduce by citation the many authorities quoted by the attorneys of the respective litigants here. We have considered them all. Our views are intended to cover all the questions therein discussed. Both grounds of appeal are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court is hereby affirmed.

MR. JUSTICE WOODS *concurring.* The question whether

a railroad company, as a matter of law, must bring its train to a standstill before ejecting a trespasser, is not necessarily involved in this case, and we express no opinion regarding it. For this reason, we concur in the result only.

MR. JUSTICE JONES *concurring.* I concur in the result, for the·reason herein stated by Mr. Justice Woods.