9194

OSTEEN v. SO. CAR. COTTON OIL CO.

(86 S. E. 202.)

MASTER AND SERVANT. EXISTENCE OF RELATION. PRESUMPTIONS. INJURY TO THIRD PERSON. LIABILITY OF MASTER.

1. MASTER AND SERVANT—EXISTENCE OF RELATION—PRESUMPTIONS.—One who is in possession of property of the owner, and who uses it in the service of the owner, is presumptively a servant of the owner.

2. MASTER AND SERVANT—INJURY TO THIRD PERSON—LIABILITY OF MASTER.—A traveling salesman used sometimes the employer's horse and buggy in soliciting orders from stores. He had no authority to employ any one. While using the horse and buggy, he took a negro boy with him as he had done several times before, to have the boy hold the horse while visiting customers. After completing the business trip he directed the boy to take the horse and buggy to the

employer, and while so doing the boy negligently drove the horse, injuring a third person. *Held,* that the boy was in the employ of the employer, who was responsible for his negligence.

3. MASTER AND SERVANT—EMPLOYMENT.—Where an employer entrusts its employee with the custody of a horse and buggy, for use in its business, with discretion to return it as he might think best, and he makes use of a third party for this purpose, such third party is to be regarded as the servant of the employer, who is responsible for his negligence in driving.

Before SHIPP, J., Greenville, September, 1914. Affirmed.

Action by J. S. Osteen, as administrator of the estate of Richard S. Osteen, deceased, against South Carolina Cotton Oil Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. Haynsworth & Haynsworth,* for appellant, submit: *Doctrine of respondeat superior does not apply to this case:* 6 Ency. of L. 227; 5 S. C. 465; 15 Rich. 201; 1 Labatt M. & S., secs. 16 and 27; 28 L. R. A. 436; 72 S. C. 471; 84 S. C. 550; 85 S. C. 132; 94 S. C. 334; 71 S. W. 741; 26 L. R. A. 739, 741; 1 Labatt M. & S., sec. 95; 132 Ill. App. 177; 60 S. E. 1015; 33 Mo. App. 250; 73 S. E. 377.

*Mr. J. R. Martin,* for respondent, submits: *Defendant responsible for negligence of Davenport:* 3 S. C. 6, 7; 93 S. C. 144; 1 A. & E. Enc. of L. 410; 58 S. C. 145; 97 S. C. 176; 9 L. R. A. (N. S.) 1035, 1036. *Davenport's acts in course of his employment:* 1 L. R. A. (N. S.) 235; 21 Am. St. Rep. 840, 844; 41 Am. Rep. 392; 120 Am. St. Rep. 549, 550; 47 Am. Rep. 796; 46 Am. St. Rep. 279, 280; 38 Am. St. Rep. 361; 19 Am. St. Rep. 306; 9 Am. St. Rep. 649.

FOOTNOTE.—As to liability of master for injury to property or person of one to whom he owes no contractual duty by acts of volunteer whom servant permits to assist in the performance of the master's service, see note in 45 L. R. A. (N. S.) 382.

*Robert Harrison was an agent of defendant:* 26 Cyc. 1519; 76 S. C. 539. *Existence of disputed agency was a question for the jury:* 31 Cyc. 1672; 3 S. C. 1; 67 S. C. 391. *Burden on defendant rebut presumption of agency:* 67 S. C. 395; Huffcut, Agency (2d ed.) 296.

September 11, 1915.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Appellant states his case as follows:

"On January 14, 1912, Richard S. Osteen, while on his way to the railroad station at College Place, in the city of Greenville, was crossing Beattie street when he was struck by a buggy which was being driven by a small negro. Death resulted and this suit was brought for the benefit of his wife and children. The verdict of the jury was for $2,000. This involved a finding that his death was caused by the negligence of the negro driver. Inasmuch as there was some testimony sustaining this finding it could not be, and is not, questioned in this appeal.

The team, which belonged to the defendant, was kept at the office of the mill and used principally by the manager, but to a considerable extent it was also used by others connected with defendant's business.

The uncontradicted testimony showed that J. T. Davenport, who is a traveling salesman for the defendant, had been using the team in soliciting orders from the stores in and around Greenville. That on starting out on this trip he met the negro boy at the American Bank and took him in the buggy, as he had done several times before.

Davenport's purpose was, on visiting a customer, to let the boy hold the horse. On this occasion, after completing his business trip, Davenport stopped in the business part of Greenville for his dinner and directed the negro to carry the horse back to the mill.

Now, the negro was not an employee of the mill. The manager did not know that Davenport had been letting the negro ride with him. Indeed, the evidence shows that this was probably the first time the negro had ever driven the team. But he would ride with anyone who would let him, and had several times ridden with plaintiff's witness, Campbell.

As already stated, Davenport was a commercial traveler for the mill. Sometimes he would accept checks for the company. He was without authority to employ anybody connected with the business.

Davenport, in making his trips to the stores in and around Greenville, sometimes used the horse and buggy belonging to the mill, and sometimes the buggy belonging to his father, or to Mr. Norwood, or Mr. Epps, and he sometimes allowed friends or others to ride with him.

The questions involved in this case are whether there was any testimony tending to show that the death of Osteen was the proximate result of the negligence of the defendant, or to show that the boy who was driving the horse was the agent of the defendant, it being submitted that the only reasonable conclusion was that the boy was not the agent of the defendant, and that the defendant was not responsible for any negligence on his part."

It is only necessary to add: Mr. Davenport was using the horse and buggy in the service of the mill and was sending it back to the mill for the use of another employee in the scope of his service. There is only one question: Was the little boy the agent and servant of the mill?

When one is found in possession of property, he is presumed to be the owner. When it is shown that the property has recently been stolen, the possessor is presumed to be the thief. When one is found in possession of property of another, using it in the service of the owner, he is presumed to be the servant of the owner. *Polatty* v. *Ry., 67* S. C. 395, 45 S. E. 932.

The manager testified that he employed all the servants of the mill except Mr. Davenport, whose employment was independent of him. That he had not employed the little boy. Neither the manager nor any one else testified that Mr. Davenport was required or expected to bring back the horse and buggy and that he could not have sent the horse and buggy back to the mill by another, if his business and that of the mill made it desirable. On the contrary, the manager testified: "Q. Do you O. K. Mr. Davenport's orders and expenses? A. I O. K. everything. Q. Did you give him instructions about how he might use that horse and buggy when he went out? A. No, sir. Q. Or when you let him have it for dinner? A. No, sir; because he would not have had his job if I had to give him that information. Q. You left it with his discretion? A. Knowing that he had some sense; yes, sir."

The horse and buggy were in Mr. Davenport's custody, with discretion to return it as he thought best. He used his discretion in returning it to the mill by the little boy. It was on the mill's business.

No want of authority has been shown and the mill is responsible for the negligence of the little boy as its servant.

The judgment is affirmed.

· MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and WATTS concur in the opinion of the Court.

MR. JUSTICE GAGE dissents.