ALLEN, Acting Chief Judge.
George Goldie, the appellant, was the plaintiff in the lower court and is appealing from a summary judgment granted in favor of Jack C. Dillon, one of two defendants in a negligence action.
Plaintiff Goldie had left his power lawn mower at the service station of appellee, Jack C. Dillon, for repair. Subsequently plaintiff returned to the station to pick up the mower which had been repaired to the point that it would start but would stall out.
Defendant Douglas, against whom the cause is still pending below, was present at the time plaintiff came back to pick up his mower and Douglas undertook to make an adjustment on the mower’s carburetor. Upon completing the adjustment, Douglas took the controls of the mower and pushed the gas throttle forward precipitating the mower upon plaintiff’s foot causing serious injury.
Since this case comes to this court on an appeal by the plaintiff from a summary judgment dismissing the cause as to the defendant, Jack C. Dillon, it is necessary that we detail the pleadings, affidavit and depositions taken below and considered by the trial judge on the application for-the summary judgment given in this case.
*82 The appellant, Goldie, alleged in his complaint “that he took his gasoline powered lawn mower to the defendant Jack C. Dillon’s service station for the purpose of having said mower repaired. At said time and place the defendant, Jack C. Dillon, agreed to repair the plaintiff’s mower. When the plaintiff returned later the same day to pick up his mower, the defendant, Milton Douglas, who was then and there the agent or servant of Jack C. Dillon, while operating the plaintiff’s mower, a dangerous instrumentality, with the knowledge, consent and under the direction of Jack C. Dillon, so carelessly and negligently operated the same with the power on as to cause said mower to be pushed, rolled or driven upon the plaintiff’s left foot, thereby causing him to sustain severe, painful and permanent injury thereto.”
The defendant Dillon answered denying the allegations of the above paragraph. He also answered that the plaintiff conducted himself so carelessly and negligently that he contributed to his own injury.
The defendant Milton Douglas denied that he was an employee or agent or servant of the defendant, Jack C. Dillon, and further denied that he carelessly and negligently operated the mower of the plaintiff, etc.
The defendant Dillon moved the court to enter summary judgment on the grounds that the pleadings on file, the deposition of the plaintiff and the affidavit of Jack C. Dillon show that there is no genuine issue of any material fact and that the defendant is entitled to a judgment as a matter of law.
The affidavit of Dillon states :
“My name is Jack C. Dillon and I am the operator of Dillon’s Pure Oil Service Station and I am one of the defendants in the captioned case. At the time of the accident which occurred on October IS, 1960, at my station in which the plaintiff was injured, the defendant Milton .Douglas was not my agent, servant or employee nor was he working under my direction. At the time of this happening the defendant Milton Douglas was on the premises of my station in the capacity of a customer only and nothing more. He voluntarily attempted to adjust the carburetor on the plaintiff’s mowing machine. He, at the time of this happening, could properly be described as a spectator who became interested in adjrtsting the carburetor on the plaintiff’s mowing machine and voluntarily did what he could to properly adjust it. I had no control whatsoever over the defendant Milton Douglas at the time.”
It appears from the deposition of the plaintiff Goldie as follows:
“A. On Saturday morning, which was October IS, I took my mower to Jack’s station to ask him to repair it. I wanted to mow my lawn that day — I was off on Saturday, and he told me to leave it there and he would fix it, but that he wouldn’t be able to get to it until sometime in the afternoon and it would be ready about 3:00 o’clock. I said that would be all right. * * * Then I put the air in the tires and at that time they had the mower where it would start but it was stalling. Evtry time you would go to rev it up, it would stall. The young boy that was working there for Dillon, Ronnie I believe his name was, he was — he had been working on it, and every time he would go to race the motor up to show how it would run, it would stall. Douglas was standing there and he told Jack all it needed was an adjusting on the carburetor. He said, ‘Do you want me to do it?’ And Jack nodded his head. Well Jack and I had been standing talking on the side, and I was talking about the hose, that it was leaking. It sounded like the attachment that I put on it to put air in the tires had a leak in it. I don’t know — I think I was eighteen inches to two feet from *83 the mower at that time. I have a great respect for them. So I asked Jack if he wanted me to put the air blower back on the hose, and we were talking about the hose leaking. About that time the mower hit my foot. Douglas had adjusted the carburetor and Ronnie was standing over to one side, and Jack and I were discussing the leaking hose. And he got up from the side of the mower and said, ‘There, that ought to do it,’ and he walked around and pushed the gas throttle forward.
“Q. Who are you talking about now, Douglas ?
“A. Yes.
“Q. Was Douglas — did he have physical control or possession, so to speak, of the mower at the time of the accident ?
“A. Yes, sir.
“Q. He was the man behind it?
“A. Yes, sir.
“Q. Did he have hold of the handlebars?
“A. To tell the honest truth, sir, I don’t know if he had hold of the handlebars or not. He couldn’t have had hold of both handlebars because the gas throttle was in the center of the two and you need one hand to operate that.
“Q. Douglas was behind it?
“A. Yes, sir.
“Q. And you were right in front of it?
“A. Yes, sir.
“Q. Where was this red-headed boy named Roth?
“A. He was on the side. He had stepped back to let Douglas go ahead and adjust the carburetor.
“Q. Roth wasn’t doing a thing at all to the machine at the time of the accident?
“A. No, sir, not at the time of the accident, no, sir.
“Q. Nor was Mr. Dillon. Was he in front of the machine, too?
“A. Yes, sir, we were standing side by side.
******
“Q. You had never seen this fellow, Douglas, working around there, had you?
“A. I had seen him, yes, sir, but I didn’t recognize him.
“Q. You didn’t think he was an employee of Mr. Dillon’s?
“A. No, sir.
“Q. Now this Douglas just volunteered to work on this carburetor, didn’t he?
“A. He told Mr. Dillon, — all you need is adjusting on the carburetor, do you want me to adjust it?
“Q. What did Mr. Dillon say?
“A. He nodded his head. If he did say anything, I don’t recall. Go ahead —or something else, I just don’t recall.
* * * * *. *
“Q. As far as you know, Mr. Goldie, this man Douglas worked on the machine — he was just some person that happened to be standing around the station and your mower at the time?
“A. So far as I knew, yes, sir.
“Q. You weren’t relying on him being an employee of the station in any sense, were you?
“A. Not being an employee in one sense of the word, no, sir.
*84 “Q. You didn’t think that he was an employee?
“A. That’s right. I didn’t know what his status was. He told Jack he thought it needed adjusting and Jack nodded his head or said something like go ahead. I just don’t know.
“Q. What precisely did Douglas do to the machine? Do you know?
“A. He merely adjusted the carburetor, sir. That’s when Roth, or Ronnie, stepped out of the way and let him get in. Roth had been working on the machine previous to that.
* * * * * *
“Q. Till Milton Douglas started to adjust the carburetor, how far was Mr. Dillon standing?
“A. He was standing talking to me.
“Q. Would you say within five feet of the lawn mower ?
“A. Within five feet, yes, sir.
“Q. Did you have any objections to Mr. Douglas working on the machine?
“A. I took it there to be fixed. I didn’t care who fixed it.”
The trial judge, in his order granting the summary judgment, stated:
“The Court having examined the complaint, the answers filed in the cause, affidavits and depositions of the Plaintiff, George Goldie, and the court finding in the premises that the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material facts and that the Defendant, Jack C. Dillon, is entitled to judgment as a matter of law, it is therefore
“ORDERED that a Summary Judgment be and is hereby ordered entered in behalf of the Defendant, Jack C. Dillon, * *
The Plaintiff, in his complaint, alleged that Dillon agreed to repair the plaintiff’s mower and when the plaintiff returned to pick up the mower it was not operating correctly; Douglas, who was the agent or servant of Dillon, while operating the mower, a dangerous instrumentality, with the knowledge, consent and under the direction of Jack C. Dillon, so carelessly and negligently operated the same with the power on as to cause said mower to be pushed, rolled or driven upon the plaintiff’s left foot, causing him to sustain severe, painful and permanent injury thereto.
Both defendants, Dillon and Douglas, denied that Douglas was an employee, agent or servant of Dillon. Dillon filed an affidavit in which he denied that Douglas was his agent, servant or employee or working under his direction and that at the time of the happening of the accident Douglas was on the premises of his station in the capacity of a customer only and nothing more and voluntarily attempted to adjust the carburetor on the plaintiff’s mowing machine. The affiant then stated:
“He, at the time of this happening, could properly be described as a spectator who became interested in adjusting the carburetor on the plaintiff’s mowing machine and voluntarily did what he could to properly adjust it. I had no control whatsoever over the defendant Milton Douglas at the time.”
The plaintiff, in his deposition, stated that Douglas told Dillon that all the mower needed was an adjusting on the carburetor. He said, “Do you want me to do it?” and that Dillon nodded his head.
The lower court ruled that as a matter of law under the facts set forth in the affidavit, pleadings and deposition that Dillon had no responsibility for the .injury inflicted on the plaintiff. We must reverse the lower court for a trial on the issues presented by the pleadings, affidavit and deposition in this case. In other words, though admittedly a volunteer, there is a *85 question of material fact as to whether Douglas became an agent or servant of Dillon when voluntarily attempting to adjust the carburetor with Dillon’s consent.
In the case of Watson v. Watson, 121 Fla. 173, 163 So. 476, our Supreme Court held that where the plaintiff, at the defendant’s request, assisted in starting the defendant’s stalled automobile, the plaintiff became the servant of the defendant as regards the defendant’s liability for injuries sustained by the plaintiff when the automobile suddenly started, throwing the plaintiff violently to the pavement.
The facts, as appear from the opinion in the above case, were that the defendant’s automobile stopped on a street in Marianna. The defendant called to the plaintiff (his brother) for assistance and two other persons volunteered their assistance. The defendant was inside the car operating the controls. Suddenly, and without any warning, the car made a start, a quick jerk and jump, throwing the plaintiff off his balance and violently to the pavement. The jerk was produced by the accelerator being pushed down by the driver’s foot. The Supreme Court, in its opinion, said:
“We may say in the beginning that under this state of facts W. J. Watson in the eye of the law became the servant for the time being of H. O. Watson, and H. O. Watson became liable to him as a master to a servant.
“There was no evidence that W. J. Watson was directed by H. O. Watson as to what position he should take or how he should proceed to perform the service requested of him in helping to get the car started.”
In the case of Williamson v. Pike, 1927, 140 S.C. 376, 138 S.E. 831, the South Carolina Supreme Court held, in an action against a filling station owner for the loss of a customer’s automobile from fire, that the question of whether persons serving plaintiff were agents of defendant in fact or by acquiescence was for the jury. In this case the plaintiff alleged that the defendant owned and operated in connection with his mercantile establishment a filling station; that the plaintiff, with two companions, stopped his car at the filling station for the purpose of securing oil and gasoline. While the car was being supplied with gasoline, a fire occurred, which practically destroyed plaintiff’s automobile. He alleged that his damages were caused by the negligence and recklessness of the defendant, his agents, and servants. The defendant in his answer admitted that he owned and operated a filling station, but denied the other allegations of the complaint.
The South Carolina Supreme Court, in its opinion, said:
“We find evidence to show the following facts: Defendant was absent temporarily from his place of business. His wife was in charge. Frequently she assisted her husband in conducting the business, and oftentimes managed it in his absence. One Neighbors, who was a peace officer in the discharge of his duties, frequently visited defendant’s place, and, in some instances, without remuneration served customers who purchased gasoline and oil. On the night of the fire, plaintiff, with two companions, went to the filling station to purchase gasoline and oil for the Ford car of plaintiff, in which the three were traveling. Plaintiff had not stopped at the place formerly. When plaintiff arrived at the filling station, Neighbors and one Marchbanks, persons not known to plaintiff, were sitting in front of the store. Plaintiff called for gasoline, and Neighbors and Marchbanks went to serve him. Plaintiff and his companions went into the store for cold drinks, and were served by the wife of the defendant. While in there, some one on the outside asked Mrs. Pike for the gas lantern. She did not make any reply to this call, but one *86 of the men took the lantern from the store and carried it to the filling station, where it was placed by Neighbors on the seat of the automobile. The gasoline tank of the automobile was under the seat of the car. Within a moment or two, while plaintiff and his companions were still within the store, the automobile was set on fire by an explosion of gasoline and almost totally destroyed. Mrs. Pike may have known and seen the man carry the lantern from the store, and may have had knowledge that Neighbors and Marchbanks were attending to the car of the plaintiff. She entered no objection to these services being rendered by them. She had known formerly of like services being performed by Neighbors, made no objection thereto, and accepted money he collected from customers.
“In the case of Osteen v. S. C. Cotton Oil Co., 102 S.C. 146, 86 S.E. 202, L.R.A.1916B, 629, the following was held:
“ ‘One who is in possession of property of the owner, and who uses it in the service of the owner, is presumptively a servant of the owner.’ (Syllabus.)
“The principle announced in the Osteen Case has been approved in other cases. See Keen v. Army Cycle Mfg. Co., 124 S.C. 342, 117 S.E. 531, and Burbage v. Curry, 127 S.C. 349, 121 S.E. 267.
“Under the authority of the cited cases, we think the facts reviewed by us were entirely sufficient to sustain the action of the county judge in sending the case to the jury.”
In Lemieux v. Leonard Const. Co., R.I. 1947, 56 A.2d 189, a motor vehicle occupant brought suit against a railroad for injuries sustained in a collision at a crossing resulting from the alleged negligence of the crossing tender in failing to give adequate warning of an approaching train. At the time of the collision the crossing was being tended by an employee of a contractor engaged in repairing the crossing. The Supreme Court of Rhode Island held that the railroad relied on the contractor to give necessary warning at the crossing thereby adopting the contractor’s crossing tender as its agent to perform its duty of safeguarding the crossing and could not therefore escape liability for the crossing tender’s negligence on the ground that, as to the railroad, he was a mere volunteer.
The Court, in its opinion, said:
“If it relied wholly upon the crossing tender to give the necessary warning, then it adopted him as its agent to perform that duty and would be answerable for his negligence. In such a case the railroad company cannot escape liability on the ground that as to it the crossing tender was a mere volunteer. For the rule is: ‘In case the volunteer renders a beneficial service for the alleged master, in his presence or with his knowledge, and is suffered to proceed without dissent, an assent may be implied and the relation of master and servant established to an extent necessary to render the master liable to third persons for the tortious acts of the volunteer done in the course of such service.’ Huffcut on Agency, 2d Ed., 293, citing Hill v. Morey, 26 Vt. 178.”
This case must be reversed for further proceedings not inconsistent with this opinion.
Reversed.
WHITE, J., and SMITH, FRANK A., Associate Judge, concurs specially.