TCHULA COOPERATIVE STORE *v.* QUATTLEBAUM.

Opinion delivered March 26, 1928.

1. AUTOMOBILES—LIABILITY OF COMPANY HIRING TRUCKS.—Where a plantation manager hired trucks to convey laborers to its plantation under an arrangement that the truck owner would furnish one driver and the manager two, *held* in a suit against the plantation owner for damages caused by the driver of one of the trucks running into another automobile, that the driver of such truck was the servant of the defendant company, though he had been placed in charge of the truck by the driver furnished by the truck owner, such driver being the servant of defendant company.

2. TRIAL—SPECIFIC OBJECTION TO INSTRUCTION.—Objection that an instruction is doubtful in meaning should be raised by specific objection.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict of the jury on conflicting evidence will not be disturbed on appeal.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

STATEMENT OF FACTS.

This appeal comes from judgments for damages for personal injuries and to an automobile caused by a collision with a truck alleged to have been negligently operated by appellant company and driven on the wrong side of the road at the time of the collision.

It was alleged that the appellant company was a corporation engaged in farming upon the Lake Dick place, about 15 miles from Pine Bluff. That, in order to secure laborers for cotton chopping, it hired from E. W. Hood, the proprietor of a "U-Drive-'Em" establishment, three trucks for carrying its farm hands and laborers from in and near Pine Bluff to its store on said plantation. After the day's work was finished the cotton-choppers were again loaded on the trucks to be returned to Pine Bluff, and, before reaching the city, one of the trucks collided with a Studebaker Special Six automobile, driven by the son of appellee, Quattlebaum, and injured W. W. Nelson, a passenger therein, and almost demolished the automobile. It was alleged that the truck was being driven upon the wrong side of the road, the same side upon which

the car was lawfully proceeding, and at a reckless rate of speed, which caused the injury.

The appellant company denied all the allegations of negligence of the complaint; that the Studebaker car was proceeding at a moderate rate of speed, as alleged, and that the truck was driven upon the same side of the road as the car at the time of the collision; denied that it was upon the wrong side of the road and that the driver did not slacken speed in attempting to avoid the collision; denied that plaintiffs had been damaged in the sums as alleged, or at all; denied that it was operating the truck or responsible for its operation at the time of the collision, or that it had anything to do with causing the damage, if there was any damage; alleged that the driver of the Studebaker car was crippled and physically incapable of controlling or managing an automobile, and that Quattlebaum was negligent in permitting him to drive it, and that the car was being negligently and carelessly operated and driven at an excessive rate of speed, with headlights which were so bright as to blind the operator of the truck at the time of the collision, and pleaded such contributory negligence in bar to recovery.

The complaint of W. W. Nelson, who was riding in in the car with appellee Quattlebaum's son at the time of the injury, contained the same allegations of negligence, and the answers thereto denied the material allegations of the complaint, and alleged contributory negligence of the driver of the wrecked car. The cases were consolidated for trial.

E. W. Hood, who was sued jointly with appellant, answered, denying the material allegations of each complaint, and the suits were later dismissed as to him.

It appears from the testimony that the manager of the plantation for the appellant company, Mr. McKenzie, had employed from Hood, who was operating a "U-Drive-'Em" garage, three trucks for transporting farm laborers from Pine Bluff to Lake Dick plantation, the proprietor of the hiring agency agreeing to send along one driver in order to look after any necessary mechan-

ical repairs and adjustments on the trucks; the other two drivers to be supplied by Mr. McKenzie. On the morning of the day of the collision the three trucks were loaded, and proceeded to carry the laborers down to the farm, Jack Jaggers being the driver supplied by the hiring agency, and Sterling Starks driving another truck, which was in the collision in the evening. Mr. McKenzie accompanied the trucks, riding in his own car with two or three others, either in front or along behind the loaded trucks. When they had proceeded to near Bevo, Jack Jaggers put J. W. Wells in charge as driver of the truck which Sterling Starks had been driving.

McKenzie stated that he had nothing to do with the change of the drivers after they left Pine Bluff, and was not aware that the driver had been changed until the next day after the wreck. Said he was not present at any place along the road where the driver was substituted for Starks, and did not come back with the hands that night, having left the plantation about three o'clock that afternoon. That there was no one else connected with the appellant company or having anything to do with the transportation of the hands or laborers who had authority to change drivers or make any change in the drivers selected by him for the trucks. Did not know Starks until he hired him, the Sunday before, to drive the truck. Said he left town about the same time the trucks did, and they proceeded along pretty well together to the street car crossing called Bevo. That he passed the trucks just out of town, and stopped near the free bridge to see how they were getting along. They were heavily loaded, and he had a heavy load on his Hudson car.

Two or three of the witnesses testified that Mr. McKenzie was there when the change of drivers was made; and others said he was near at the time. One witness who was riding in the car with Mr. McKenzie said she saw the change was made, and another witness said that Starks was driving the truck when they left Bevo, and that after they got to the store she noticed that the

other man was driving. Did not know that Mr. McKenzie noticed the difference, however.

Jim Greer, whose business it was to arrange to hire the hands, take them down to the plantation, and see that the work was done properly, was also along with the trucks, and was given money at the free bridge by Mr. McKenzie to buy a fan belt, the one on the particular truck having broken or come off.

Starks, the driver employed by McKenzie to drive the truck, and who started out with it in the morning, left the plantation in the afternoon and went over to the railroad station, and came back on the train. The driver, Wells, who had been put on the truck after it left Bevo in the morning, started back with it, loaded, in the evening, and near the free bridge collided with the car driven by Quattlebaum, appellee's son, injuring Nelson, and smashing up the car.

The appellant offered to introduce in testimony a statement made by Wells, the substituted driver, about the wreck or occurrence, in testifying in another case, a different suit for damages resulting from the same collision, and excepted to its exclusion from the jury.

The court instructed the jury, and from the judgment on the verdict in favor of Quattlebaum for $500 damages to the car, and in favor of Nelson, who was riding in the Quattlebaum car, for $1,000 for personal injuries, this appeal is prosecuted.

*Coleman & Gantt,* for appellant.

*Jones & Hooker,* for appellee.

KIRBY, J., (after stating the facts). It is insisted for reversal that there is no testimony sufficient to support the judgment, and that the court erred in giving certain instructions in which it is claimed the driver of the truck causing the damage in the collision was assumed to be the agent of appellant, instead of leaving the question to be determined by the jury.

It is true that the plantation manager who hired the trucks to be used in the transportation of the hands or laborers from Pine Bluff to the plantation testified that

he employed Starks as the driver of one of them, the one afterward in the collision, and put him in charge thereof, and had no knowledge or information that another driver, Wells, had been substituted for him on the trip to the farm in the morning, and knew nothing about the different driver taking the loaded truck back to Pine Bluff in the evening, until after hearing of the collision and wreck that night; stated, however, that he did come along in his own car near the trucks, when they started out, and had waited for them at the free bridge to inquire how they were proceeding, and had given Jim Greer, the agent of the company, who collected the hands and accompanied them to the plantation in their work there, money to purchase a fan belt for one of the trucks. The change of drivers was made about this time, or had been made before.

Several witnesses testified that Mr. McKenzie, the manager, was present when the change was made. One or two of the witnesses being carried in his car stated they had noticed the driver being changed, and that Wells had been substituted for Starks at the store near the bridge. The testimony also shows that the hands were paid off by the bookkeeper at the store upon the identification of Jim Greer, and that Wells was paid as a truck driver at his suggestion.

The driver, Jack Jaggers, furnished by the hiring agency for one of the trucks, was necessarily the servant of the appellant company, engaged in its business in transporting the hands or laborers to the plantation, and subject to the control and direction of his employer, as was also Jim Greer, whose business it was to collect the hands, assist in getting them to the plantation, and see that they did the work which they were employed to do.

The testimony tends to show that McKenzie, the manager, was present when the change of drivers was made, and one witness said that he knew it was done. In any event, whoever drove this truck taking the laborers to the plantation for cotton chopping, was engaged in the service of the master, whose duty it was to carry

them to and from their place of labor, under the terms of their employment.

The driver of one truck sent along by Hood, from whom the three trucks were hired, was not charged with any duty to Hood, the proprietor of the "U-Drive-'Em" agency, to procure or supply drivers for the other two trucks, nor for their safe operation, being sent along by the hiring agency, so far as the other trucks were concerned, only to keep them in good mechanical condition. He was otherwise the servant of appellant company in the transportation of its laborers to and from the plantation.

If Starks, the driver employed by appellant's manager, had abandoned the truck on the trip without reason or excuse, in the absence of the manager, McKenzie, who had started out with and accompanied the trucks for some distance on the way, and either Greer, who had employed and collected the laborers and was accompanying them to the plantation, or Jaggers, who was the driver hired with one of the trucks for transporting them, had assumed to place another driver in charge of the truck abandoned by Starks for completion of the trip, there is no reason to say that such substituted driver would not have been the servant of the appellant company in such operation. This substitute for Starks drove the truck on down to the plantation, and was paid off by the bookkeeper of appellant company, upon the designation by Jim Greer as a truck driver, when the other laborers were paid for the day's work.. He started on back to Pine Bluff, driving the truck, the former driver, Starks, having departed on the afternoon train, transporting and returning the farm laborers to their home in the evening in accordance with their contract of employment, and we hold that he was a servant of the master engaged about the master's business in so doing, and necessarily for whose negligence, so far as the public is concerned, the master must be held to account.

The instructions complained of do not tell the jury that the truck was operated by the agent of the appellant

company, but it is apparent that it was the intention to leave the jury to find from the evidence that it was operated or driven by the agent of the appellant; and if its meaning was regarded doubtful on this point, the error should have been corrected by a specific objection, which was not made.

The jury has found, on conflicting evidence, that the collision with appellee's automobile and its destruction and the injury to appellee Nelson was caused by the negligent operation of appellant's truck in the conduct of its business, and its verdict will not be disturbed.

The assignment that the damages adjudged for personal injury to appellee Nelson are excessive seems to have been abandoned here, but the testimony is sufficient to support the verdict, in any event.

We find no prejudicial error in the record, and the judgments are affirmed.