ICE SERVICE COMPANY *v.* FORBESS.

Opinion delivered October 28, 1929.

*Mike Danaher* and *Palmer Danaher,* for appellant.

*Rowell & Alexander,* for appellee.

BUTLER, J. Robert Douglas, a negro man, assisted by his son, Willie Douglas, whose age is not disclosed by the testimony, was engaged in delivering ice in the city of Pine Bluff, and, while so engaged, a large block of ice fell from the rear of the delivery wagon, striking and injuring a boy about ten years of age, the son of the appellee. The appellee brought suit in his own right and for the benefit of his minor son for damages for the injury, alleging that the same was occasioned by the negligence of the two negroes while in the employ of the appellant, Ice Service Company. There was a trial, and a verdict for the plaintiffs in the sum of $4,000.

Error is assigned because of the admission of incompetent testimony and in the court's declarations of law, to all of which timely objections were made and exceptions duly saved. A careful examination of the testimony and instructions given discloses no reversible error.

We think appellant has correctly stated the vital issue: "The only question in this case is whether Willie Douglas, who was driving the wagon, was an employee of the defendant, Ice Service Company."

It is admitted that the evidence, while conflicting, is sufficient to establish negligence on the part of those in charge of the delivery wagon, and the sole issue in the case is whether these persons were the servants of the appellant Ice Service Company. The latter insists that there is no liability attached to it, because neither Robert Douglas nor Willie Douglas were in its employ, but were independent peddlers of ice on the streets of Pine Bluff, and the only connection appellant had with them was to sell them ice which they, in turn, independently sold and delivered, without any control or supervision on the part of the appellant.

It appears there were two corporations in Pine Bluff engaged in the manufacture, sale, and delivery of ice, the Southern Utilities & Ice Company and the City Ice Company, prior to the 29th day of June, 1927, on which date the appellant ice company was organized and took over the retail business of the ice companies and the delivery to the customers in the city of Pine Bluff. One of these companies was known as the City Ice Company. Miller testified that Robert Douglas, before the organization of the appellant company, had a contract with the said City Ice Company, which defined and specified his relationship with respect thereto, and that, when the appellant company was formed, he (Miller), who was also the manager of the City Ice Company, and became the manager of the appellant company, told Robert Douglas that he could continue to work under the same contract for the appellant company. This contract was introduced in evidence, on the theory that it might be taken into consideration in determining what contract Robert Douglas had with the appellant company. The contract specified that Douglas should purchase all of his ice from the appellant company, pay for it at the close of the business day, and sell it to the citizens of Pine Bluff at a price to be fixed by him (Douglas); that he would pay the appellant company the sum of $1 per week for the wagon he used in the prosecution of his business. Mr. Miller, the manager of the appellant, and Willie Douglas were the only ones testifying as to any direct knowledge of the relationship existing between the appellant and Robert and Willie Douglas. Both testified positively that the Douglases were not in the employ of the ice company; that Robert Douglas was an ice peddler; that the appellant had no connection with him except to sell ice to him and deliver it to him on his wagon at the storage house of the appellant, and that Willie Douglas worked for Robert Douglas, his father, and was paid for his services by him.

Appellant insists that there was no testimony contradicting this evidence. There were, however, other

conditions in the contract and other facts and circumstances proved in the case which we think have been overlooked by the appellant. The Ice Service Company, as shown by its articles of incorporation, was organized for the purpose of retailing and delivering ice in the city of Pine Bluff. There was a license tax required by the city for those engaged in that kind of business, which was paid by the appellant company. It took over from the City Ice Company and the Southern Ice & Utilities Company the equipment owned and used by them in the delivery of ice. The appellant company owned the wagon that was used by Douglas, and paid the tax on it. The appellant company required Douglas to store the wagon at all times, when not in use in the prosecution of the delivery of ice, in the storehouse of appellant, and prohibited its use for any purpose except the delivery of ice. It prescribed the territory in which Douglas was to operate, and required that all complaints, orders or inquiries received from patrons in that territory should be referred to the company. Mr. Miller, appellant's manager, controlled the loading of the ice upon the wagon, and would not allow more than a certain amount to be loaded thereon, the average load being about 2,400 pounds. The city also required a license tax for all peddlers, and it was shown that no peddler's license was ever issued to Robert or Willie Douglas, or that they had paid any peddler's license fee, either during the time they were working for the City Ice Company or continued for the appellant company, and that they had been working for the City Ice Company for about two years before they began working for the appellant company. The ice which was unsold at the end of the day's business was returned to the appellant company and stored in its warehouse, and on the following morning that ice, or "its equivalent," was again delivered to Douglas.

As before stated, Mr. Miller was manager of the City Ice Company, and also of the appellant company. During the two years that Robert Douglas had been engaged

in the delivery of ice, Willie Douglas, his son, helped him. Mr. Miller stated that he knew this—that he had seen Willie on a number of occasions around the ice plant with Robert Douglas, and had seen Robert's wagon out on delivery work a number of times and Willie with it; one would drive the wagon and the other deliver the ice; that he kept Robert Douglas' wagon in repair and controlling the manner of its loading.

There was testimony to the effect that, a short time before the trial, Willie Douglas had stated that he was working for the appellant company, and was going to testify to that fact.

Counsel for the appellant argue most earnestly and plausibly that the evidence is wholly insufficient to establish the relationship of master and servant; that it does show that the negro, Robert Douglas, was an independent peddler or contractor, and that, even though Robert Douglas might have been the servant of the appellant, Willie Douglas is shown to have had no connection with such company, but worked solely for his father.

*Terry Dairy Co.* v. *Parker,* 144 Ark. 409, 223 S. W. 6, is similar, and, under the rule *stare decisis,* controls the instant case. The facts in that case were as follows: "The appellant is engaged in selling milk and manufacturing and selling ice-cream. It buys milk from dairy farmers and distributes it to its customers in Little Rock. During the summer months it contracts with drivers to sell what the stores want. Appellant starts running its wagons about the first of March. It gets good men, who take it on commission, and it gives 10 per cent. a gallon for the first thirty gallons and five per cent. a gallon over that. It had three men running like that. Bob Ellison was one of them. He was using appellant's truck at the time of the injury. Appellant paid the license on the truck. The truck had painted on it in big letters, 'Terry Dairy Company.' Appellant did not have any control over Ellison as to the quantity of cream he should sell or dispose of or to whom he should sell. He would

come in in the morning and write out his order for what he wanted, and then he would sell to whomsoever he pleased, and turn in what he sold. He got whatever he wanted, and it was loaded on the wagons, and the company had no more control of it. Appellant had a verbal contract with Ellison by which he would take out his cream and sell it, and account to appellant for the price of the cream. He turned back the cream he did not sell, and got credit for that. He was charged with the amount he got in the morning, and had to account for that amount of cream, either by turning in charge tickets or turning in cash for what he sold. He had been working for the company four or five years. Appellant paid Ellison's commissions once a week. Did not pay him anything except the commission. Appellant did not furnish Ellison any help; if he hired any help, appellant did not have anything to do with it. John Freeman, the negro driver who was driving the truck at the time of the injury, was not working for the appellant, although he had previously worked for appellant in the capacity of truck driver, and anything else that came up. At the time of the injury his name was not on appellant's payroll, but when he worked for appellant his name was on the payroll.''

The court held that, under the above testimony, it was an issue for the jury as to whether or not Ellison was an independent contractor at the time of the injury to the appellee, and as to whether or not John Freeman was in his employ or in the employ of the appellant. This is our conclusion in the case at bar.

Counsel for the appellee urge that the decision in the above case should be overruled, and to support this contention cite an array of authority which they fortify by cogent reasoning and illuminating illustration. We are much impressed by the able argument, but are not convinced that we should depart from the rules announced in *Terry Dairy Company* v. *Parker, supra.*

On the question where, in a given case, the relation of master and servant obtains, this court has held that

the method by which the compensation for work to be done is not conclusive as to the relationship of the parties, nor the name by which the compensation is called. The conclusion as to the relationship must be drawn from all the circumstances in proof, and, where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant. *Magnolia Petroleum Co.* v. *Johnson,* 149 Ark. 553, 233 S. W. 680; *Harkins* v. *National Handle Co.,* 159 Ark. 15, 250 S. W. 900. This was the rule applied in *Terry Dairy Co.* v. *Parker, supra,* and is in accord with the weight of authority. 39 C. J., § 1518. Although Willie Douglas might not have been employed by appellant, but only by his father Robert, the testimony is undisputed that appellant knew for two years that Willie was engaged in helping his father deliver ice; knew in what way this help was given; and it became a question for the jury whether Robert's act in procuring Willie's services was acquiesced in and ratified by appellant. If it did ratify or acquiesce in the boy's employment, he then occupied the same relation to appellant as Robert, and therefore the appellant was liable for his negligence. It might be said that he was an instrumentality used in the furtherance of appellant's business, and, when the appellant knowingly permitted this, it may be said to have adopted such instrument, and become liable for his negligent acts. *Osteen* v. *S. C. Cot. Oil Co.,* 102 S. C. 146, 86 S. E. 202, L. R. A. 1916B, 629; *Lakin* v. *Ore. Pac. R. Co.,* 15 Ore. 220, 15 Pac. 641; *Althorf* v. *Wolfe,* 22 N. Y. 355; *Demmit* v. *Hannibal,* 40 Mo. App. 654.

It is not infrequent that liability attaches to the master for the negligence of one employed by the servant or substituted for him, where that one, in the prosecution of the master's business, negligently causes an injury. *Tchula Co-Op. Store* v. *Quattlebaum,* 176 Ark. 780, 4 S. W. (2d) 919. In those cases the liability seems to attach

upon the broad ground that the master is responsible for the negligence of the servant, whether the same be his immediate act or his mediate act only; but in the case at bar it is unnecessary to fix liability on that ground (and we do not in this case so hold), for the evidence was sufficient to submit the question to the jury on the theory that Robert Douglas' employment of Willie was acquiesced in and ratified by appellant.

The issues raised by the pleadings and evidence were fully and fairly submitted to the jury under proper instructions, and we think its verdict was not excessive. The boy injured was ten years of age, and the son of a printer. A block of ice weighing 300 pounds fell, striking him and crushing his hand. Both forefinger and second finger were so injured that it appeared at first necessary to amputate both. However, the bones of the second finger were set, and that finger saved. The forefinger and about one-half of the bone extending from the base of the finger to the wrist were amputated; the skin of the index finger was torn off, and the palm of the hand was used to cover up the torn-out flesh. The doctor said: "The boy has a very good hand, minus one finger, with a pad that looks rather bunglesome in the palm of his hand." The boy suffered great pain for a considerable time. As before stated, we think, under all the circumstances, the verdict was not excessive. See *Moline Timber Co.* v. *Taylor,* 114 Ark. 317, 222 S. W. 371; *Terry Dairy Co.* v. *Parker, supra.*

Judgment affirmed.