PULLEN v. FAULKNER.

4-5053

Opinion delivered May 23, 1938.

232

G. R. *Haynie* and *Barber & Henry,* for appellant.

L. B. *Smead, W. R. McHaney* and *Homer T. Rogers,* for appellee.

GRIFFIN SMITH, C. J.   Appellee, as administratrix of the estate of Curtis Faulkner, alleged in her complaint that Minor Holleman, while driving a truck loaded with logs, negligently stopped before reaching the crest of a hill; that because of defective brakes the truck rolled back and struck a team and wagon driven by Curtis Faulkner; that Faulkner was thrown from the wagon and sustained injuries from which he died within two hours; that Holleman was an employee of appellant and at the time of the accident was operating the truck for appellant, on appellant's business.

The answer denied that the accident occurred in the manner set out in the complaint, and alleged that the fatal injuries sustained by Faulkner were either wholly or partly caused by his own negligence; also, that the situation involved an unavoidable accident.

Appellant lived at Louann, Arkansas, and operated three trucks.   He contends that these trucks were regularly manned by Houston, Rivers, and Emmons, drivers

carefully selected. They had been instructed not to trust their trucks to anyone else; that if circumstances prevented continuance of the work assigned, they should return the trucks to the garage.

On the morning the accident occurred, appellant, with Houston and Rivers, had gone to a place near Hope, leaving the third truck with Emmons for use in hauling logs from woods to mill. Appellant also had a crew working in the woods, one of whom was Minor Holleman, a colored boy. It is urged by appellant that Holleman's job was that of a "mule skinner"—he was engaged to drive a team in "snaking" logs in the woods.

During the morning in question Emmons had taken one load from the woods to the mill when he was told of sickness in his family. Thereupon, he asked Holleman to finish the day's work for him. Appellant's testimony is to the effect that Holleman at first declined, but upon reconsideration accompanied Emmons to the mill with the second load. This was completed about two o'clock in the afternoon. Emmons then turned the truck over to Holleman to make the third load.

Holleman testified that he drove from the mill to the woods, got a load of logs, and while climbing a long, steep hill on the way to the mill he passed Faulkner's wagon and team. After passing the outfit he pulled back to the right side of the road. When near the top of the hill, and apprehending that he was not going to make the grade, Holleman shifted to "double low," and "the axle snapped, or something." The truck, deprived of the braking power supplied through action of the gears and cylinder compression, began rolling backward. Knowing of Faulkner's position, Holleman says he turned to the left side of the road and steered the truck into a ditch in an attempt to give Faulkner room to pass. Faulkner's team, however, came running from behind the truck. The mule on the left ran into the right front fender, but kept going. Faulkner was thrown about ten feet in front of the truck, and the wagon ran over him.

Holleman testified that the brakes on the truck worked properly on the previous trip, and that no difficulty was experienced until the axle snapped.

There was testimony on behalf of appellant that the truck's brakes had been inspected the day prior to the accident; that necessary repairs had been made; that they were in good condition, and fluid had been put in the master cylinder of the hydraulic system.

Appellee's witnesses testified that the brakes were not in good condition; that the pedal went all the way down to the floor board, and that there was insufficient fluid in the cylinder. One witness, testifying with reference to fluid in the hydraulic brake system, said: "There wasn't enough in there to make the brakes work. . . . When you pressed on the pedal you would see [the fluid] bubble in there."

There was other testimony relating to condition of the brakes. In view of the sharp variance in such testimony, the question was properly referable to the jury.

It is insisted, however, that Holleman was not the agent of appellant—this for the reason that Emmons was without power of appointment. It was shown that Holleman had formerly worked for appellant; that there was an interim during which he did not work, and that he was subsequently employed. Prior to the last employment he had driven a truck for appellant.

Undisputed facts upon which appellant relies for a reversal are that Emmons was without express authority to place Holleman in charge of the truck. Appellee undertook to show that an emergency existed, and that it was the duty of Emmons, in such circumstances, to continue the work assigned to him through substitution of a driver; that Holleman, on previous occasions, had driven trucks for appellant; that he was familiar with the work, and that the situation was such as to justify Emmons in believing that he was acting in his master's interest—that he impliedly had authority to continue operations through designation of Holleman.

Appellant insists that there was no emergency; that Emmons had not been authorized to exercise his own discretion in selecting a driver; that, conversely, Emmons and other drivers had been instructed not to make substitutions; and, therefore, the emergency, if one existed,

terminated when Emmons returned to town with the truck after completing the second load.

We concur in the view that the emergency did not exist. Appellant was in Hempstead county on the day of the accident, and was not in a position to receive information as to how the work was progressing. He had entrusted the truck to Emmons and had a right to believe that the instructions he had given would not be violated. One of these instructions was that if an emergency arose the truck was to be returned to headquarters. An emergency did arise, and the truck was taken to town. If the accident had occurred while Holleman was driving from the woods on the second trip, and prior to reaching the place where the truck should have been left, appellant would have been liable. But this is not the case. After completing the second load, Emmons told Holleman to go back to the woods and complete the day's work —the work Emmons was supposed to do. There is nothing in the record to show that appellant would have been penalized if the third load had not been hauled. There is no suggestion of a time limit with respect to completion of the hauling. The only pertinent fact is that Emmons concluded, in violation of directions from appellant, that the day's hauling should be finished, and he assumed responsibility to direct Holleman to use the truck.

In making the two previous trips Emmons had hauled logs with the same truck over the same road, and up the same grade without mishap. His conduct in so doing, and the fact of his employment by appellant as a regular driver, indicate that he was competent. In making a haul over the same road, Holleman inexpertly handled the truck, with disastrous results. There was no authority, express or implied, by which Emmons could justify the course he pursued—a course of conduct admittedly contrary to instructions.

The instant suit is to be distinguished from the class of cases where a servant, without authority of the master, requests the assistance of a third party, and through the negligent act of such third party an injury occurs. It has been held that when the work so delegated by the

unauthorized act of the servant is done within the actual or constructive presence of the servant, the negligent act is the act of such servant, and the master will be liable. Nor is the rule laid down in cases cited by appellee transgressed by our holding here of nonliability. See *Federal Compress & Warehouse Company* v. *Jones,* 180 Ark. 476, 21 S. W. 2d 857; *Tchula Co-Operative Store* v. *Quattlebaum,* 176 Ark. 780, 4 S. W. 2d 919, and others of similar import.

In the Quattlebaum Case there was testimony that the master knew of the substitution. In the Federal Compress Case the accident occurred through the positive negligent act of the employee in throwing a sack of cotton out a window without being sure there was no one on the sidewalk.

Another case referred to by appellee is *Ice Service Company* v. *Forbess,* 180 Ark. 253, 21 S. W. 2d 411. But in that case there was testimony to the effect that the master had for a period of two years known that the servant, Douglass, was using the helper.

Section 1458, 39 C. J., p. 1271, is: "Subject to the limitation that the act complained of must be within the scope of the servant's employment, the master is liable for the acts of one whom the servant employs under authority given him by the master to assist in the master's work. The authority to employ assistants may be either express or implied; it may be implied from the nature of the work to be performed, from the general course of conducting the business of the master by the servant, or from circumstances of the particular case. Authority to hire other servants to do the work of the master may be implied when he knows of such hiring and acquiesces in it. A master may also become liable for the acts of an assistant employed by a servant where he ratifies such employment. Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not

exist, and he is not liable for the negligent acts of the latter under the doctrine of *respondeat superior.*"

The judgment is reversed, and the cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.

McHANEY, J., disqualified and not participating.