CADDO RIVER LUMBER COMPANY *v.* HOLMES.

4-5689 133 S. W. 2d 884

Opinion delivered December 4, 1939.

affirmed.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.

*Osro Cobb, Fred A. Isgrig* and *Jerry Witt,* for appellee.

HUMPHREYS, J. Appellee brought suit in the circuit court of Montgomery county against appellant and an alleged co-employee of appellee, alleging that the appellee was an employee of appellant, and that while engaged in cutting down a tree for appellant on November 6, 1937, out of which to make ties, his fellow servant negligently jerked the saw used in felling a tree, so as to pull appellee in the path of the falling tree, which fell across his body and crushed his left leg above the knee, fracturing the femur bone and impairing, injuring and severing the muscles, nerves and ligaments of the left leg.

Appellant filed an answer denying the allegations of the complaint and interposing the further defense that at the time appellee alleges he was injured through the negligent act of his co-employee he and his co-employee were the employees of Waymon Scott, an independent contractor and not employees of appellant.

The issues joined by the pleadings were submitted to a jury on the evidence introduced by the parties under instructions of the court, resulting in a verdict and consequent judgment in favor of appellee for $10,000, from which is this appeal.

At the conclusion of the testimony appellant requested the court to instruct a verdict for it on the theory that the undisputed evidence showed that appellee and his co-employee were working for Waymon Scott, an

independent contractor, and not for it, which request was refused over appellant's objection and exception.

It argues for a reversal of the judgment on the ground that there is no substantial evidence in the record tending to show that appellee and his fellow servant were its employees at the time he was injured and, for that reason, the trial court should have given its request for a peremptory instruction.

Although there is substantial evidence in the record tending to show that Waymon Scott had entered into a written contract with appellant to cut and saw cross ties for it at 22½ cents each and was to furnish his own equipment and labor in making them, yet we find much evidence in the record tending to show that Waymon Scott was in fact a superintendent or foreman for appellant and that he employed appellee and his co-laborer for appellant' and not for himself.

Waymon Scott testified that he was a foreman for appellant and not an independent contractor; that he had never been in the contract business; that he was not financially able to undertake independent contracting; that he had no experience in that kind of business or work, and could not carry on that character of work without being supervised and directed in the details thereof by other employees of appellant who understood the business; that appellant reserved the right to hire and fire men he used to do the work; that appellant retained one-half of one cent out of the price of each tie to insure the laborers he used to do the work; that some time after appellee was injured, appellant paid him the one-half cent on each tie which it had theretofore deducted claiming that its bookkeeper had made a mistake in paying him twenty-two cents for each tie instead of twenty-two and one-half cents as agreed upon; that when appellee was injured appellant directed him to take appellee to physicians of its own selection for treatment and paid all the expenses itself or, at least, told him it had done so, and although he continued to work for appellant five or six months after appellee was injured it never deducted physician, nurse or hos-

pital charges out of the amounts due him. Other witnesses testified to facts and circumstances corroborating the testimony of Waymon Scott.

The contract relied upon by appellant as evidencing that Waymon Scott was an independent contractor was written on a blank used by appellant in making lumber trucking contracts. There were a number of erasures and insertions in it and there was some evidence tending to show that the original contract and the copy thereof were not exactly alike. There was some evidence tending to show that a number of the provisions not erased in the blanks had no application to contracts for making crossties, but had application to lumber trucking contracts only. The contract contained no specifications as to the character or kind of ties to be made, such as dimensions, length, thickness or the kind of timber to be used in making them and no time was fixed within which they were to be cut and sawed, nor the length of time the contract should continue in force and effect. In fact, about the only definite thing in the contract was the price to be paid for making and sawing the ties. The substance of the contract was merely the employment of Waymon Scott to go on appellant's land, cut and stack crossties of no particular description for an indefinite time or until further notice.

We cannot say as a matter of law from the written contract and the undisputed evidence as to the manner in which it was executed or carried out, that Waymon Scott was an independent contractor. In view of the conflicting testimony on this issue, it became a question of fact for determination by the jury.

In the case of *Wilson* v. *Davidson*, 197 Ark. 99, 122 S. W. 2d 539, this court reviewed a number of cases laying down various tests as to whether one was an independent contractor or merely an employee or servant and said: "In all foregoing cases, it is held that it is the right to control and not the actual control that determines whether or not one is a servant or an independent contractor."

In the application of this rule this court said in the case of *Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W.

2d 411, that: "The conclusions as to the relationship must be drawn from all the circumstances in proof, and where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant."

In the case of *Humphries, et al.* v. *Kendall*, 195 Ark. 45, 111 S. W. 2d 492, this court said: "The vital test in determining whether a person employed to do a certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant, . . . and wherever the employer interferes in any way with the work and superintends or controls its performance, this destroys the relationship of independent contractor."

No contention is made that the court erred in its declarations of law, but simply that it erred in submitting the issue of the relationship of appellant and Waymon Scott for the alleged reason that there was no substantial evidence in the record tending to show that Waymon Scott was an employee or servant, but that the undisputed evidence showed that his relationship to appellant was that of an independent contractor. As stated above, we think that there is much substantial evidence in the record tending to show that Waymon Scott was an employee or servant of appellant and in view of the conflict in the evidence the trial court did not err in submitting that issue to the jury. The jury found that the relationship of master and servant existed between Waymon Scott and appellant, and appellant is bound by the finding of the jury against it upon the issue.

Appellant contends, however, that the verdict is excessive and should be substantially reduced. The argument is made that because Dr. Parmalee testified that in his opinion, when sufficient time had elapsed, appellee would acquire full, normal function of knee

action, and in view of the fact that appellee's earning capacity ranged from $1.50 to $2 a day with an expectancy of thirty-one years, the verdict was excessive. Dr. Parmalee testified that it would perhaps take eighteen months or more for him to recover so that he could carry on his work of farming and timber cutting again. He, of course, meant from the date of the trial. Eighteen months had already elapsed between the date of appellee's injury and the date of the trial when Dr. Parmalee examined appellee. Appellee had not recovered on the date of the trial. He could not walk, but with the aid of a stick could hop around and was still suffering a great deal of pain.

Learned counsel in arguing for a substantial reduction of the verdict and judgment leave out of the question entirely the kind and character of the injury received by appellee and the excruciating pain and suffering endured at the time of and after his injury. The testimony reflects that a large tree fell on him pinning him to the earth and crushing his left leg and bruising and injuring the other; that a co-employee tried to lift the tree off of him, but was unable to do so on account of its size and weight; that he called for help and two or three others came and together they raised the butt of the tree and released him. They made a stretcher of their jumpers and carried him through the woods to their truck, a quarter of a mile distance. They then carried him in the truck lying on a little hay in the bed of the truck over a logging road to Forester, sixteen miles distant. They then had to make a detour on account of road work and go by Mt. Ida and thence to Glenwood over rough roads before reaching highway 70 over which they traveled to reach Hot Springs. The injury occurred about 7:30 in the morning and they did not reach the hospital until noon or some time thereafter. Appellee testified that it was about four or five hours from the time of the accident until his leg was placed in a cast; that they put his leg in a plaster of paris cast starting at the toes and that it came up the leg to his waist and encased his hips; that they spread his legs apart and fastened them with a board; that he

stayed in this position for eighteen days and could not move anything except his head and arms; that he laid on his stomach for twenty-four hours and after that time on his back; that Dr. Tribble took the cast off his leg and kept it in a hot-pack for five days because the bone had not knitted; that they then operated upon him and re-set the bones and put a drainage tube in his leg; that the leg was then put back in the cast and that seven days thereafter a window was cut in the cast for the drainage tube to go through; that they kept the second cast on his leg for seventeen days and that he was sent home in the cast which the doctor took off about February 1, 1938; that he was returned to the hospital at that time and kept there a week or ten days; that they massaged his leg and kept it in hot-packs; that during all this time from the date of the injury he suffered excruciating pain and, in his own language, suffered death.

There can be no question about his great suffering which caused him to moan and scream out many times. All the witnesses who were with him on the trip from the place of his injury to the hospital corroborated his testimony relative to his suffering. In fact, his testimony to the effect that he has suffered continuously great pain is not disputed by any witness. It is not contended that the court incorrectly instructed the jury as to the measure of damages. There is little or no doubt that he was injured to such an extent that he will never fully recover from it and be restored to a condition where he will work either in the field or woods. Dr. Scroggins testified that appellee will always have pain in the limb because of the lack of fluid in the knee joint and the impingement upon the sciatic nerve.

There is nothing in the evidence that tends to show that the jury in arriving at its verdict was moved by passion, prejudice, or an incorrect appreciation of the law applicable to the case. In the case of *Coca-Cola Bottling Works* v. *Cordell*, 189 Ark. 1132, 76 S. W. 2d 307, it was said: ''The extent of the injury and the amount of recovery were questions of fact for the jury, and there is nothing in this case to indicate passion,

prejudice, or an incorrect appreciation of the law applicable to the case. This court, as was said in *Texas & St: L. Ry. Co.* v. *Eddy*, (42 Ark. 527) cannot set aside a verdict if it is supported by proof, and when there is nothing to indicate passion, prejudice or an incorrect appreciation of the law applicable to the case."

We think the amount of the verdict is responsive to the evidence and fully justified by the evidence.

No error appearing, the judgment is affirmed.