LETTS, Judge.
This appeal stems from a jury instruction on the question of an agency relationship between the owners of a tavern and a sub, sub volunteer bouncer. We find no competent evidence of any agency relationship and reverse.
The Big Daddy’s Bar in Lake Worth, held a “twenty-five cents per drink” night every Tuesday and big crowds were customary. On the Tuesday night in question, at least two hundred noisy and boisterous patrons were in attendance, although the Lake Worth Fire Chief testified that the fire *6 regulations limited the maximum occupancy to 87 persons.
Employed at the bar was an I.D. checker and bouncer whose main duty was to watch the door. Apparently, the bouncer had become friendly with a regular patron who on occasion took over the door duty while he (the bouncer) left his station, to use the rest room, and whatever. This regular patron was not employed by the bar, nor was he paid for his relief work, he just occasionally helped out his bouncer friend.
On this particular night, the regular patron was once more asked by the bouncer to watch the back door. At that point, although much of the evidence is conflicting, it appears that a bottle of whisky was discovered to be missing and the bartender supposedly shouted to the temporary volunteer door watcher, to stop anybody from leaving. Simultaneously with this shouted instruction, one of the customers, later shot dead, was attempting to leave by the back door, (He had not stolen the whisky and in fact, it was subsequently discovered, none had been stolen.) where he was stopped by the volunteer temporary door watcher. The customer protested, as did other patrons, some shoving took place and the temporary door watcher shouted to another friend who was his buddy and fellow drinking partner, to “go get his bazooka(s).” This buddy had never volunteered for, or done any, door watching or any other duty at the bar before, but he took off for the temporary volunteer door watcher’s car and emerged with two handguns. He then went berserk, ran back across the parking lot, fought off two bystanders who attempted to stop him, and while still out in the parking lot, began to fire indiscriminately. One shot hit and wounded one of the appellees, while another bullet struck and killed the other, whose exit had originally been prevented, but who, by this time, had managed to leave the tavern.
Pursuant to this scenario, the trial judge, inter alia, instructed the jury in the following manner:
If you find that Ceotis Burgess [the berserk murderer] was an agent of Defendant Castlewood [the tavern owner] at the time in question, and that the Defendant Jones [the occasional volunteer door watcher] played a direct and approximate [sic] role in the agency relationship between Ceotis Burgess and Castlewood, then your verdict should be against Cas-tlewood and Jones jointly. If you do not find that Jones played a direct and proximate role in the agency relationship between Castlewood and Burgess, but you do find that such agency relationship existed, and that Burgess was acting within the scope of such agency, then your verdict on this claim should be against Cas-tlewood only.
We believe this instruction was prejudicial error, and the point has been properly preserved for appeal.
There is no doubt that the bartender was a servant of the tavern owners. There is no doubt that the permanent bouncer was also. It is further arguable that the occasional volunteer temporary door watcher was an agent of the bar. At that point in the chain, however, we believe any agency stopped, under the facts of this case.
We note with approval, the case of Higgins v. Investors Acceptance Co. of Miami, 287 So.2d 724 (Fla. 3rd DCA 1974) in which a bill collector, deputized a helper, called at a debtor’s home and the helper, in a show of strength, sprayed the debtor with mace. The court held that such behavior was neither authorized nor expected by the bill collector’s employer. The case at bar is much more bizarre, for the defendant tavern owners could never be expected to have authorized, or expected, the back door to become a shoot out, never mind an indiscriminate “shoot ’em up” in the parking lot, in no way related to the prevention of people leaving the tavern. As one witness testified:
“He wasn’t really taking aim at anybody. He was just shooting.”
The appellees argue that there was an implied agency created by the presence of an emergency and cite Jacobi v. Nolan, 122 So.2d 783 (Fla. 1st DCA 1960). However, in that case, a car salesman employed a helper *7 to go get customers cars for service, a normal function to be expected by the car agency employer, in no way comparable to the case now before us.
We would stress that we do not pass on the issue of whether the tavern owners were negligent, nor do we find that any of the other points on appeal constitute reversible error. There remains the fact that the jury verdict did not set forth the theory upon which it reached its verdict, and it may well have done so upon the agency relationship which we have found is not present under the facts of this case.
REVERSED AND REMANDED FOR A NEW TRIAL.
DOWNEY, C. J., and DAUKSCH, J., concur.