Robert BURDELL, Plaintiff and Respondent,

v.

Mylon Elmer ASH, Third-Party Plaintiff and Respondent,

v.

SPIELMAN IMPLEMENT AND CHEVROLET COMPANY, Defendant and Appellant,

v.

John BUSCH, Third-Party Defendant and Respondent.

No. 7960.

Supreme Court of North Dakota.

Aug. 17, 1962.

Anderson & Wolf, Bismarck, for defendant and appellant.

McGee, Van Sickle & Hankla, Minot, for plaintiff and respondent.

Drey & Schwartz, Garrison, for defendant third-party plaintiff and respondent.

Higgins & Murphy, Bismarck, for third-party defendant and respondent.

BURKE, Judge.

Plaintiff sued the defendants Mylon Ash and Spielman Implement and Chevrolet Company for damages arising out of a collision of two automobiles, one of which was being driven by plaintiff's grandson and the other of which was being driven by Mylon Ash. It was alleged that the damages to plaintiff's car were proximately caused by Ash's negligence. Spielman Implement and Chevrolet Company was joined as a defendant upon the theory that Ash was an employee of the company and engaged in the course of his employment at the time of the accident.

The answer of the defendant Spielman Implement and Chevrolet Company denied that Ash was its employee. The defendant Ash denied any negligence on his part and filed a third-party complaint against John Busch as a third-party defendant, praying that the court enter judgment against John Busch for any sum which might be adjudged against him. Defendant Busch answered, denying that Ash was his agent or employee. The case was tried to the court without a jury and plaintiff obtained judgment against the defendants Ash and Spielman Implement and Chevrolet Company. The case was dismissed as to the third-party defendant John Busch. Spielman Implement and Chevrolet Company has appealed and demanded a trial de novo in this court.

There is only one question in the case and that is whether Ash was an employee or agent of Spielman Implement and Chevrolet Company and acting in such capacity at the time of the collision. The amount of damages and Ash's negligence are undisputed.

On December 23, 1958, John Busch came to the place of business of Spielman Implement Company and Chevrolet Company at Underwood, for the purpose of buying a new automobile. He spoke with I. W. Wolfe the proprietor of the company and, as a result of this conversation an agreement was reached for the purchase of a new car by Busch. Busch stated that he would buy a specific car if he could get it before Christmas. The car at the time was in the stock of Davis Chevrolet Company in Bismarck. It was arranged that Busch and one of Wolfe's employees, one Ronnie Bader, would drive to Bismarck in Busch's old car the next day; that Bader would drive the old car back to Underwood and Busch would drive the new car. The next morning, Busch came to the garage at sometime between 8:00 and 9:00 o'clock a. m. Wolfe was not there at the time but Busch spoke with Ronnie Bader and Claude Ash. Claude Ash had been an employee of the garage for many years and was the father of Mylon Ash. Busch told them that something had come up that made it impossible for him to go to Bismarck and that he wanted them to make some other arrangements to get the new car to Underwood that day because he wanted it for Christmas. Bader stated that they might be able to get Mylon Ash to drive the new car back. Upon being assured that they would try to get the new car to Underwood that day, Busch left, without knowing what arrangements would be made. After Busch left, Bader called Mylon Ash and asked him if he would drive the new car to Underwood. Mylon agreed to the proposal after securing the consent of his father, Claude Ash.

Mylon Ash and Bader picked up Busch's old car at his garage at about 10:00 o'clock a. m. and drove to Bismarck. On the way back to Underwood Bader drove the old car and Mylon Ash drove the new one. About twelve miles south of Washburn, Ash attempted to pass Bader in the old car, while going up a hill. At the top of the hill he suddenly saw plaintiff's car coming from the opposite direction. The drivers of both cars apparently simultaneously drove into

the ditch to avoid a head on collision. As a result they collided in the ditch.

Wolfe testified that he had not employed Mylon Ash to drive the car and that he had not authorized any of his employees to hire him. He stated that he was not aware that the original arrangement, by which Busch was to drive the new car, had been changed until Busch came into the garage about 2:00 o'clock in the afternoon. Mr. Wolfe's denials related only to a specific authorization to hire Mylon Ash on the day of the accident. He did not state that, in his absence, none of his employees had authority to make routine decisions and take such actions as were necessary to the conduct of his business. His testimony in this regard is as follows:

"Q. Now is it not a fact that when you were gone that Mr. Ash, Mylon's father, was in charge or in charge of the business there, looked after it, or was that in the hands of someone else?

"A. Well, I wouldn't say that he was or was not.

"Q. Didn't you have somebody that generally assumed responsibility for directing things on those occasions when you were gone?

"A. Yes, I do, yes.

"Q. Who is that if it wasn't who was it at that time if it wasn't Ash?

"A. Well, at that time I would say it would have been Mr. Ash, but it was only a matter of half an hour that I wasn't there."

There is no question but that the trip to Bismarck to drive the new car back to Underwood was made for the benefit of the garage. Even if Mr. Busch had gone to Bismarck as originally planned, the turning of the car over to him for the purpose of driving it back to Underwood would have constituted a delivery of the car to Spielman

Implement and Chevrolet Company. Concerning this Mr. Wolfe testified:

"Q. At the time he brought the car back was there any further work to be done in your garage with reference to the checkover or check list or anything?

"A. Well, that was to be determined when the car was brought there because a lot of times the cars are serviced by another dealer before their being driven any distance.

"Q. That would be before you ultimately take (give) delivery, possession of the car to the buyer?

"A. Yes."

According to this testimony the title to the new car was in the garage at the time of the accident, and would have been so, even if Busch had been driving it. Actual delivery of the car to Busch was not contemplated until after the car had been received and checked by the garage at Underwood.

█ It is thus clear that, at the time of the accident, the new car was being operated in the course of the business of its owner, Spielman Implement and Chevrolet Company. While Mr. Wolfe denied that he had given anyone specific authority to hire Mylon Ash on the day of the accident, such specific authority was not necessary if the authority may be reasonably implied.

"* * * The authority to employ assistants may be either express or implied; it may be implied from the nature or extent of the work to be performed, from the circumstances of the particular case, from the general course of conducting the business of the master by the servant, as where it is such as necessarily requires the help of others, or from the fact that an emergency arises necessitating assistance; * *." 57 C.J.S. Master and Servant, § 564 pp. 280, 281.

Here it was established that if the sale of the new car to Busch was to be consummated, it was necessary that it be brought to Underwood on December 24th. When the arrangements made by Wolfe, the previous evening, for transporting the new car to Underwood failed, Claude Ash, in Wolfe's absence, made other arrangements in the interest of his employer. The transporting of new and used cars over the road between Davis Chevrolet in Bismarck and the Spielman Garage in Underwood was a customary procedure and while there is no evidence in the record that Claude Ash had, or had not, secured drivers for such trips on previous occasions, the authority to make such a selection is implied in his general authority "to assume responsibility and direct things" in Wolfe's absence.

A case which has much similarity to the instant case is Tindall v. Tacconelly, Tex. Civ.App., 328 S.W.2d 909. In that case an automobile dealer hired one Morris to transport new cars from Houston to San Antonio. Morris arranged for another driver to help him. The question in the case was whether the helper became an employee of the automobile dealer. In this case the Texas Court said, (p. 911)

"And the most significant evidence is the testimony of defendant Tindall that he 'told him to go get the cars and bring them back * * *. I just told him to get them down here to me the best way he could.' He broadly and generally conferred authority upon Morris by these instructions. An employee thus instructed to do a task 'the best way he could,' has some discretion on what is the best way."

See also Jacobi v. Claude Nolan, Inc., Fla. App., 122 So.2d 783, a case which deals with the employment of a driver by an automobile salesman.

In the instant case we are agreed that in employing Mylon Ash, Claude Ash did no more than assume the responsibility that Wolfe testified he had conferred on him. We therefore concur in the trial court's decision.

The judgment of the district court is affirmed.

SATHRE, C. J., and MORRIS, STRUTZ and TEIGEN, JJ., concur.